Jonathan Waller is here for Appellant Whatley, Marion Homer Little Jr. is here for Ohio National and Mr. Waller, are you ready to proceed with your argument? Yes, Your Honor. You may. Thank you. Good morning, Your Honors. We understand that any appeal is an ask, and when there is authority, apparent authority from another circuit, that we need to address that, and I'd like to do that briefly. We come to this court with appeal on three causes of action, third-party beneficiary unjust enrichment and tortious interference. The tortious interference claim was not presented to the Sixth Circuit or to the trial court in Ohio, so the Browning case, those two cases and Cook say nothing about our tortious interference claim. I'll come back to that in a minute. Those cases do discuss, that is Cook and Browning, third-party beneficiary and unjust enrichment. For whatever reason, of course, we were not counsel of record in Cook or Browning. For whatever reason, the lawyers in that case did not raise the controlling Ohio authority of Byzantine. Are we applying Ohio law on the tortious interference claim? I thought we were looking at Alabama law. Yes, we are as to the tortious interference. That's exactly right, Your Honor. I was just simply saying that whether it be under Alabama or Ohio law, the tortious interference claim was not presented. So when we look to Alabama law then, how do you get around Barber v. Business Products Centers, an Alabama Supreme Court case that says the defendants have the right to do business with whoever they choose and although their refusal to deal may be actionable as a breach of contract, it is not actionable in tort? Well, Barber was overruled in part by White Sands. We believe White Sands is the controlling case. For example, to the point, Barber is factually distinguishable. The refusal to deal had nothing to do with an interdependent or related contract such as we have here. There was simply a relationship, a contract between GSA and the defendant and the plaintiff had no relationship. But doesn't... Go ahead. You go ahead. Well, doesn't White Sands itself say that one of the elements of wrongful interference with a business relationship is that the defendant be a stranger to the relationship? Yes, Your Honor. And the whole position that Ohio National has taken is that our clients are strangers to the selling agreement between the broker-dealers and Ohio National. In other words, Ohio National takes an inconsistent position in several respects, but with respect, a refusal to deal has to do with I simply declined to do business with another party in the absence of interrelated contracts. So there is some overlap. I mean, the interdependent contracts are important for this reason. What we are saying is that Ohio National... We've alleged every element of tortious interference, and we say that Ohio National had knowledge of the relationships between the broker... The contractual relationships between the broker-dealers and our clients. The selling agreement provided for selling, trailing commissions. Ohio National had to continue to pay those trailing commissions as long as the annuities remained in force. What Ohio National has said, and it's important, particularly at the pleading stage, that it was a stranger to the agreement between the broker-dealers... But isn't there a category other than a stranger or a party? I think the law is clear that you don't... It's not just that you're either a stranger to a contract or a party to the contract. There can be... There's some third category that you're kind of... The contract affects you in some way, even if you're not a party to the contract. Isn't that where your clients would fall? Well, if we were a party to the selling agreements, we certainly couldn't bring a tortious interference claim. We have alleged each of the elements under white sands of tortious interference. We say that Ohio National knew that if it refused to pay trailing commissions to the broker-dealers, then the broker-dealers would not go out of pocket and pay the trailing commissions to our clients. Refusing... Which spells out the agreement between your clients and the broker. Nothing. You have... You allege a contractual relationship with the brokers, but there's nothing in there about what are the terms of the relationship. And I think that relationship is highly... The contractual provisions are highly relevant here. Why no allegations about the contractual relationship? We simply allege, and perhaps should have alleged... You allege you have a contract with the broker. That's all. We don't know what it provides. Well, we know a good bit about it from the requirements in the selling agreements about how the sales representatives were to behave. But it is correct that we do not have... We simply allege that there was an underlying agreement. And I think that's highly relevant, what the terms were. Yes, Your Honor. Because under those terms, you may have no claim, except against the broker. Well, all I can say is that the pleading stage... I'm saying this is pleading or no pleading. What in the world were the terms of the agreement? It's highly relevant. I think at this point, since we have pleaded properly, the elements of torsus interference at the motion to dismiss... But you've also pled a contract with the broker. And we don't know what the terms are. We've said as much as we've said in the... In other words, just to close on that, refusal to deal cases, in our view, are entirely factually ineffective. I understand that, but I'm suggesting that you cleverly omitted to put the terms of the agreement in there in order to plead these other causes of action. There was not an intent. It may have been more of an omission than an intent. But if I could turn quickly to Byzantine, the Fourth Circuit did not consider Byzantine. This is on the third party beneficiary. The Byzantine case specifically rejects the requirement that the plaintiff be a creditor. And the district court below erred in that regard in its error at 17. It said, unlike Byzantine, plaintiffs are not creditor beneficiaries. Byzantine specifically rejects the requirement of a creditor beneficiary. It says there seems to be no reason for restricting the rule to cases where the third party is a creditor. And then it says the court should not make this kind of division. It should consent itself with bringing about the entire result the promised performance would attain. And so the Sixth Circuit says nothing about Byzantine, and the district court applied Byzantine incorrectly. These contracts could not have been performed without the deals. They're independent contracts. I'm sorry, the sales representatives. The sales representatives were the ones who sold the annuities. My time is going to expire, and so if I may, I'll address what we perceive to be the inconsistency in the unjust relationship ruling of the court, unless Your Honor's wish me to say a word about that now. All right. Well, why don't you reserve that for rebuttal. Let's hear what Mr. Little has to say. Mr. Little? May it please the court, Marion Little, on behalf of the Ohio National athletes. Your Honor, I think there's a couple things that are fairly basic about the way that the plaintiffs presented their case. The first is that the premise for each of the four claims they asserted before the trial court was the same, that Ohio National had breached a contract, not a contract with the particular plaintiffs, but with the broker-dealer with whom they were associated. The other second point that stands out about the factual pattern is that the specific remedy that is sought, i.e. the payment of commissions, is the same for each of these four claims. Now, let's consider then what is an overarching theme as to each of those factual predicates. One is, of course, the selling agreement that has been the subject of two panel decisions from the Sixth Circuit Court of Appeals. But the other point that is very substantial for the court's consideration is FINRA Rule 2320G1. And counsel suggested that that was not before this court because the district court elected not to rely upon this particular rule. But in fact, in affirming a decision on appeal, the court has the ability to consider any matter in the record, and one of the items in the record is that rule. That FINRA rule establishes that my clients lack the ability, in fact, the plaintiffs are prohibited from accepting, the payment of any compensation to them. But is anyone arguing that your client is directly paying the plaintiffs? Well, in fact, that's exactly the plaintiff's position. They want paid directly. Whether we look at their third-party beneficiary claim, their promissory estoppel claim, their unjust enrichment, or even their tortious interference, they're consistent that they would like us to pay them the commission dollars. To do so violates the FINRA rule. To do so causes them to be disbarred from the industry. So they're trying to, in this case, circumvent both the selling agreement and the FINRA rule. And they're only soliciting... Wouldn't the court... It seems that they're asking for a court judgment. I wouldn't... I've not looked at this specifically, but I wouldn't think that the payment of a court judgment that ended up in their pockets would amount to the same thing as your client paying them directly in the ordinary course. Well, I think it's two sides of the same coin. Whether we pay them the commission dollars directly or whether they receive a judgment for the commission dollars, it's the same payment. Their only solution, and this is the irony of their position, their only solution before the trial court on how to avoid that rule was to say, well, don't pay us the money directly, pay it to the broker-dealer, and then they will in turn pay us. Well, that proves the point. They do not have a basis under the selling agreement for seeking any type of relief. Counsel suggests that somehow the Sixth Circuit in two panel decisions somehow failed to take advantage of Ohio law, but Ohio law is clear here. You have to be a primary beneficiary or you have no third-party beneficiary status under any type of contract. And in considering third-party beneficiary status, you will look at the four terms of the contract. The four terms of that, the four corners of that contract specify the following, that any payment of commission dollars will be by Ohio National to the broker-dealer. That same contract specifies that how the individual representatives are paid is a matter between the broker-dealer and the representative. In fact, there is a disclaimer that we will have any obligation. Mr. Little, there's nothing, do you agree with me, there is nothing in the record about the terms of the agreement between the broker and their client? That's correct, Your Honor. Nothing whatsoever. Don't you think that's highly relevant? I don't, I think at this stage of the case, it's not. I think they had their opportunity, both as part of a original complaint and an amended complaint, to state their claim. I suggest that if they put the terms of the contract in the record with the broker-dealer, it would show that they're the only cause of action they've got against the broker-dealer, period. Well, I think that's a fair assumption, given that the... And they assume the risk that the insurance company won't pay the broker. Right, right.  And there's a commission grid that dictates what percentage of the commission that it receives will be ultimately paid to a particular representative. But that particular arrangement is something that we're not made privy to. It's not information they share with us. That is a matter solely within the discussion and negotiation between the representative and the broker-dealer. So, there is certainly nothing to our knowledge, Your Honor, that suggests in that case that the broker-dealer has the opportunities or rights against Ohio National in the event the broker-dealer fails to remit payment. Mr. Little, the dismissal was with prejudice. So, if the complaint was poorly drafted, why shouldn't Watley be given an opportunity to cure the deficiencies in this complaint by including the terms of the contract that they have with the broker-dealer? I don't think the complaint was poorly drafted. I think the theory was invalid. That is, remember, in terms of the context, they filed their complaint. We filed a motion to dismiss comparable to the one the court ultimately considered and granted judgment on. They then amended their complaint with the benefit of all the authorities that we had shared with them. And then when they had their opportunity to present what they thought was their best case for surviving this judicial scrutiny, they laid it out. In fact, when they did, in fact, in one of their briefs, bury in a footnote that they wanted leave to file an additional second now, second amended complaint. But they did not articulate or explain to the trial court in any fashion how, if at all, they could address or improve their position. So, they had that opportunity. We can't fault the district court to the extent counsel and the plaintiffs failed to articulate how they would improve their factual arguments in response to our motion dismiss. They had their opportunity. They failed to take advantage of it. And I think that would conclude the matter. Mr. Waller made a brief mention at the end of this argument, brief mention of his unjust enrichment claim. So, I'm assuming that you're still relying on these two Sixth Circuit decisions to support your argument that the unjust enrichment claim is foreclosed by those two cases. It is your honor. And in fact, below the plaintiffs relied upon Ohio law and advancing that claim. And Ohio law, I don't think, is any different than Alabama law in this basic proposition. When you're looking at an unjust enrichment theory, we know that there are, in fact, certain circumstances in which it could be pled in the alternative, but where the existence of the contract is undisputed. And here it's been judicially admitted by the plaintiffs that the contract exists. And we certainly have not denied it. When there is a, it's undisputed that the contract is in existence, then Ohio law, and submit Alabama law equally as well, establishes you cannot assert an unjust enrichment claim. That argument was, I think, fairly addressed by the Browning court as part of its order. So, I understand they want to assert that as an alternative, but given their judicial admission, they're really foreclosed from advancing that argument. They really are stuck. And the reference there being three claims actually had another claim, which was promissory estoppel. But no matter what claim they bring, once we establish that they don't have third party beneficiary status under the contract, once we establish that it would be improper for them to receive any type of payment of commissions. And both of those are two independent basis for supporting the trial court's decision. But under each of the scenarios that if you can't prevail as a third party beneficiary, you can't then try to develop an alternative theory because the courts have, and people have tried different theories, but the courts have always admonished and then ultimately dismissed folks saying, if you don't have third party beneficiary status, you can't somehow indirectly obtain that status by asserting a promissory estoppel claim, by even asserting a tortious interference claim, because particularly as it relates to the tortious interference claim, and admittedly it wasn't considered in the Browning, by the Browning court, because the Browning, the plaintiff in that case ultimately dismissed the claim voluntarily. But the basic proposition is simple, that if you simply breached a contract between A and parties, excuse me, a party's breach of a contract between A and B does not give rise to a tortious interference claim by C, even though C has a contractual relationship with B. You're entitled to, it could be an efficiency breach under the law. It could simply be a breach that, it could be for cause breach, whatever, or excuse me, it could be simply a termination for any reason. But the fact that you breach a contract does not constitute a tortious event for purposes of supporting a tortious interference claim. The district court relied upon one line of cases to reach that conclusion. We've actually cited in our brief another line of cases that I think even makes the point even clearer. So I don't think there's any basis that the plaintiffs could offer, well, we know they didn't offer any in this first minute complaint, and given that they did not identify the trial for the trial court what they would alternatively argue, I don't think there's any basis for consideration of allowing them to file a second amended complaint. We would ask that the court affirm the lower court's dismissal. There's ample room for doing so, and any other result quite candidly allows them to create a contractual right they don't possess, and otherwise secure commissions if they're prohibited from receiving. Have the broker-dealers filed any action against your client? Certain broker-dealers have, Your Honor. In fact, there is a class action pending in Cincinnati by broker-dealers seeking relief directly under the contract itself, and that class hasn't been certified, but I believe the broker-dealers here would be members of that class if the class was certified. Separate in part from that class action, Your Honor, there have been certain broker-dealers across the country who have elected to bring the claims to the extent they believe they had them under the selling agreement. None of those cases have ever gone to any judgment at this point. I appreciate the court continuing to make oral argument available to counsel during the pandemic. Thank you. Thank you, Mr. Little.  Thank you, Your Honor. With respect to the issue of amendment, the Eleventh Circuit rule is clear that generally a party should have a right to one chance to amend after the first ruling by the district court on the merits. In other words, you don't count an amendment as a matter of right before the district court has ruled on the merits. And I don't have the name of that Eleventh Circuit line of cases on the top of my head, but it is clear. And so the district court's dismissal with prejudice was the first information to us that we should cure any aspect. But the dismissal with prejudice in this case didn't appear to be based on the fact that the complaint was poorly drafted. But because your legal theory was faulty and an amendment would be futile, what do you have to say about that? I don't. A futility is an exception to the rule you got one chance to amend. I don't think the district court addressed that. And I do think it's fair to say that while the complaint does not quote all the aspects of any arrangement between the sales representatives and the broker-dealers, we allege the function, what they were supposed to carry out, that they were to receive trailing commissions. There is a lot that is said in the complaint about the relationship between the sales representatives and the broker-dealers. I had not, so with respect to unjust enrichment, the Sixth Circuit and the court below did not discuss that question at length. There was simply repeated reference to the proposition that if an express contract covers the subject, then you can't have an unjust enrichment. What that really means is that if the express contract, that is the selling agreement, deals with all of the aspects of the relationship in question, that is the relationship between the sales representatives and the broker-dealers, you can't have an unjust enrichment claim. Well, we are entitled to plead unjust enrichment in the alternative. And we've cited the cases, City of Elmira, Express Energy, and Technol at page 27 of our brief, that say we should be entitled to discovery. And I would respectfully ask the court to consider the argument in the Ohio national brief at page 31. And their heading says, this is with third-party beneficiary. Third parties like plaintiffs have no standing to claim a right to be paid commissions based on a contract that is silent on that point or specifies that such payment is subject for a separate agreement. That's their argument. In other words, we are pleading in the alternative that the selling agreements between the broker-dealers and Ohio national do not cover. They do not provide for it. They do not set out the terms of the relationship, as Judge Tokvac mentioned, between the sales representatives and the broker-dealers. And there's no basis to admit, dismiss that alternative claim at the pleading stage. And with respect to FINRA, these contracts are structured consistent with FINRA. That is, there should be two contracts. The key point is they're interdependent. The first key point is they are clearly interdependent under Byzantine. Secondly, FINRA is not a vaccine, to use a current term, in any respect for a cause of action for unjust enrichment or tortious interference or third-party beneficiary. The third-party beneficiary contemplates a contractual arrangement, such as the agreement between Ohio national and the broker-dealers. FINRA says nothing about the rights of the sales representatives under these common law causes of action. And it certainly doesn't at the pleading stage, as Judge Grant mentioned. We may get to the point of a remedy. What we are saying is that the trailing commission should have been paid to the broker-dealers who would have remitted those commissions to the sales representatives. That's a matter of factual discovery and proof. Thank you, Ron. All right. Thank you, Mr. Waller and Mr. Little.